I'm Stanton Jones from Arnold & Porter, and I represent BP. This is an extreme case where this claimant, a business located more than 200 miles away from the Gulf, received a compensation award of more than $6.2 million despite being entitled to no award at all under the settlement agreement. And the district court abused its discretion by denying review of this massive windfall award for three reasons. The first two issues on appeal today involving the decline-only revenue pattern causation test and the attestation requirement both stem from the same critical flaw in this claim, and that is this claimant didn't suffer and can't establish that its losses were caused by the spill. And this is a rare case where you don't have to take my word for it. This claimant itself affirmatively argued in its own lawsuit in 2011 that its losses resulted from its significant customer DirecTV's termination of their contract. In a detailed legal complaint filed in August 2011, this claimant said over and over again that the DirecTV termination in November 2008 devastated its business. The claimant said there that the termination led to dire economic straits, that the claimant was making no income, that it had no opportunity to generate money to pay its outstanding bills. The claimant said that its cash was being depleted at approximately $1 million per month. It had to fire 175 people even before the end of 2008. And stated most succinctly, the claimant said in that 2011 complaint that the DirecTV contract termination, quote, had the direct and immediate effect of driving claimants to the brink of bankruptcy. A claimant said all of this in August 2011. That was after the spill, a year and a half after the spill. If you read the complaint, if you read this claimant's legal complaint against DirecTV, it makes exceedingly clear that the DirecTV contract termination in 2008 was the catastrophic event that ruined this claimant's business. And it's fundamentally inconsistent with the notion that the losses here were caused by the oil spill years later. Under the settlement agreement, this all bars claimant's for two independent reasons. First, claimant hasn't and can't plausibly attest that its losses were caused by the spill under the attestation requirement. And second, claimants can't satisfy any of the causation tests that are required for Zone D claimants, those located farthest away from the spill under Exhibit 4B. These do we have? You mean more claims? They told us about six months ago we were nearing the very end. It is certainly winding down in the big picture. There are more than 40 claims left at various stages. I will say, despite that being a relatively small number of claims, there is a great deal of money at stake. Just next month, I have two more of these appeals coming up that are worth tens of millions of dollars. Everyone over a million dollars gets an appeal these days. In this phase. Maybe that's not accurate. For a while we were seeing one every single month on every day. That's not accurate at all. There are reams of claims more than a million dollars. In this last phase? I don't mean totally in the whole grand scheme of things, but I'm just saying at the end they seem to be big claims about a lot of money. You're not disagreeing with that. You were just telling us you have tens of millions of dollars coming up. Certainly BP is exercising reasonable discretion in which appeals to bring to this appellate court. Did you raise this in your panel one? Yes. You're referring to the decline only revenue pattern issue. That's the only one of the issues on appeal that's affected by this waiver argument. Yes. In appeal panel one, I'll tell you what happened and I'll tell you why it doesn't matter. In appeal panel one, the appeal panel vacated and remanded the denial of the district court which was denied. That was of course an interlocutory decision. There was no award at all yet. The appeal panel had remanded to the claims administrator to make an assessment of whether a claimant satisfied additional requirements, the customer mix test, to calculate an award if appropriate. It is standard appellate practice, as your honors know, that there's typically not even an ability, much less than a requirement, that a litigant appeal an interlocutory decision of the district court to this court. And so BP's failure to pursue an interlocutory appeal following appeal panel one decision simply has no impact on its ability to raise that issue here. What do we do with the appeal panel one's determination that the entry of the six competitors independently satisfied this sort of decline only revenue test? Because it strikes me that even if you're right about the direct TV thing, if the six competitors enter, we agree that that's one of the bases on the settlement agreement that the claimant can point to, right? Sure. So again, that issue only goes to the decline only test, not to attestation or the other issue we've raised. The issue there is that the claimant never even mentioned this supposed entry of competitors before the claims administrator. That was raised for the first time and documents were submitted for the first time at the appeal panel phase. And so the claims administrator never had an opportunity to evaluate that and should have. So if the court believes, as we've argued, that the direct TV termination cannot qualify as the outside factor for purposes of the decline only test, at a minimum, the decisions below should be vacated and this matter sent back to the claims administrator to evaluate this new argument that the claimant belatedly introduced during the appeal panel phase concerning competitors. But it was considered after appeal panel one. It was considered only at the appeal panel phase in appeal panel one. After that, on remand to the claims administrator, because the appeal panel had declared that the outside factor test was satisfied, that was the end of the matter. Yeah. I mean, the way I read the appeal panel one's treatment of it is they say BP challenges the sufficiency of this evidence, you know, and whether it's good enough. But we find it, we, appeal panel one, find it sufficient. And by the way, the issue, as I said, was that that evidence had never been submitted to the claims administrator. So the claims administrator had no opportunity to evaluate it. There's no decision from the claims administrator that BP could appeal to an appeal panel if the claims administrator found it sufficient. This is just, it's out of order. The claims administrator evaluates these issues in the first instance and claimants aren't permitted simply to not appeal to an appeal panel. And so, when we look at the direct TV termination, it bears not only on the decline only revenue pattern test, but also the even more fundamental issue of this claimant's inability to plausibly attest to losses caused by the spill. So under this court's precedence, including Deepwater Horizon 3, each and every claimant in the settlement program must plausibly attest to a loss caused by the spill. And in two... Are we moving into argument two now? Argument two, correct. Okay, but can I ask you one question about argument one before you do? Sure. Can you discuss why it's not just a single decision that will be, this will be relevant to argument three also. Why isn't this just a single discretionary decision? And it's such that there's no error in the district court refusing to take it up. Sure. So this... For argument one. For the decline only test, the argument is a legal one that the appeal panel misinterpreted, misapplied the settlement agreement by allowing an outside factor that negatively impacted the claimant's revenues. Right, but every legal decision that's wrong does not mean if it's a one-off, you don't get to, it's not a use of discretion by the district court. If it's a one-off, it's not likely to repeat. So it's not a one-off here. There's actually an appeal panel split on this issue. There's another appeal panel that came out the same way, the opposite way as this appeal panel, and explained that's APD 2016-332 discussed in our briefs. That case held that the outside factor needs to be unique to 2011, meaning that the factor needs to affect the claimant's revenues for the first time in 2011. And that appeal panel decision explains, and it's clear common sense logic that that is the meaning of the outside factor prong. But if there are only 40 more of these cases, then how can it ever be use of discretion if it's a discretionary... I mean, unless these cases are all about this. So that would essentially amount to an argument that because there are only 40 more of these claims, totaling potentially hundreds of millions of dollars, that the court should just not use discretion. And you've got to show that it matters in other cases at this point. This Court's precedents establish that the district court abuses its discretion in two circumstances. One, when there is an appeal panel split on an issue that goes to the fair administration of the settlement. This case meets that. There is an appeal panel split, and this is on an issue that is at the very core of this settlement agreement. Which claimants are entitled to recover compensation on the basis of loss caused by the spill? It absolutely goes to the heart of the settlement agreement, and it is the subject of a split. And the other standard of review factor is whether the appeal panel's decision contradicts or misapplies the settlement agreement. And this one does as well. On attestation, if I can pivot back... Is this your argument two now? This is argument two in the briefs, correct. So in two recent decisions that are discussed in our recent 28J letter, this Court vacated and remanded for evaluation of questionable or suspicious attestations. Those are the foundation case and the basketball team case. And in both of those cases, the Court specifically ordered an assessment of the claimant's attestation under the new standards that were announced and set out by the Court in two other recent decisions of this Court. Those are the David West and Howard Industries cases. All four of those decisions are from this year. West and Howard established standards for evaluation, and the foundation and basketball team cases emphasized, importantly, that when the district court denied discretionary review of this issue, it didn't have the benefit of West and Howard. And all of that is true here. When the district court denied review here, it was before West, it was before Howard. District court did not have the benefit of this Court's guidance. That alone warrants at least to vacate and remand. But it gets worse because the claimant's attestation here is not just suspicious. It's not even just implausible. It's nonexistent. The claimant is not even pretending that it can plausibly attest to a loss caused by the spill here. In its brief in this Court on page 17, the claimant expressly disclaims an attestation as to causation. It says, all claimants certified was that the supporting documents attached to the claim form are true, accurate, and complete. That distorts the attestation requirement and takes it out of the realm of causation and into just a sort of, you're just attesting that the documents are what they purport to be. But it's significant that the claimant, even now, is not claiming that it can plausibly attest to a loss caused by the spill. There's good reason why the claimant isn't saying that, because it can't. The claimant itself claimed in its 2011 lawsuit that its losses were caused by the DirecTV termination in 2008, not the spill years later in 2010. And to turn around and blame the spill for losses now is not plausible. It's at least suspicious, particularly when even in its brief in this Court, the claimant hasn't claimed, yes, we are attesting that our losses are caused by the spill, not the DirecTV termination. They haven't said that, and they can't. With 30 seconds left, I'd like to just briefly touch on the expense misclassification issue, Issue 3 in our briefs. Texas Gulf Seafood holds that the District Court abuses its discretion by denying review when the appeal panel focused on the label of an expense rather than its nature. That's exactly what happened here. You can look at the claimant's brief to the appeal panel. The claimant told the appeal panel you should focus on the label rather than the nature because they said this Court had never held to the contrary. That was true at the time, but then this Court decided Texas Gulf Seafood, so now it's wrong. And on the merits, these are variable expenses for the reasons described in our brief. But we have opinions post-Texas Gulf Seafood that say just the misclassification itself can be a single, one-off discretionary thing that is not going to be an error. There are multiple decisions of this Court that apply Texas Gulf Seafood to vacate and remand for reclassification of expenses. There are published decisions post-Texas Gulf Seafood that haven't. Can you distinguish those? So there are, I don't know, without knowing exactly which one you're talking about, there are post-Texas Gulf Seafood cases where this Court says that there's not a sufficient basis to conclude that the appeal panel, in fact, ignored the nature of an expense, situations where it was ambiguous what happened. Claimant tries to fit itself into those cases. The difference here is that, again, if you go look at claimant's brief to the appeal panel, and I can give you the page numbers, ROA 20672-676, over four pages, the claimant urged the appeal panel to hold that the focus for expense classifications is on the label assigned by the claimant, not the substantive nature of the expense, because this Texas Gulf Seafood is this Court's statement to the contrary. Thank you. Reserved for the rest of my time. May it please the Court. Good afternoon. My name is Cody Riles. I'm here on behalf of the appellee in this matter who's identified in this particular suit as 100196422, otherwise known as Basic Your Best Buy, Inc., domiciled currently and at all times relevant in Monroe, Ouachita Parish, Louisiana, which is a Zone D claimant. Counsel, can you please address argument two, certainly of concern? I want to make sure that your client is not submitting claims for things that have no relationship to this bill. Absolutely, Your Honor, and we can certainly address the attestation clause. My client, Basic Your Best Buy, Inc., suffered a loss because of this spill. All you've heard about is DirecTV, okay? You haven't heard anything about the other revenue streams that this company generated, and that has to do with furniture, mattress, appliance. That's what they did before DirecTV, Your Honor. Basic Your Best Buy, Inc. was incorporated in 1980 as a closely held family corporation, and in my 16 years of practice, I have represented Basic in a number of instances. It wasn't until the early 2000s that DirecTV came about and actually retained or entered into a contract for a call center that my client provided. My client operated off of I-20 in Monroe, Louisiana, in a 53,000 square foot showroom, which had middle to high-end appliances, furniture, mattresses. I mean, it was a huge showroom, and what they did was retail. They were retail, and they did that both before and in the causation. They pointed to DirecTV, and they said, well, you sued DirecTV under California state law for an antitrust violation for the termination of a contract. They don't go into any of the revenue that's in the customer mix data related to all of the other income streams of Basic Your Best Buy, Inc. So without a doubt, Basic Your Best Buy suffered a loss of revenue due to the spill in these other areas, and they suffered a loss due to the DirecTV termination contract. And here's how, Your Honor. DirecTV entered into a contract with Basic to operate a call center on the second floor of the showroom, and it was a very complex call center. And what DirecTV would do, they would pay Basic for any of the calls that generated an activation in the system. So in Basic's revenue, DirecTV is but one entry per month. It's one customer. During all of this time, the additional revenue streams are running like they have for years. I mean, as a child, I would watch this man, the president of this company, go on TV and advertise his appliances. He was extremely successful. Just recently, I went to Houston, and I went to the Mattress Mac gentleman that pedges his bets, his promotions on the Houston Astros. I think he lost greatly this go-around. It's the same type operation, and you don't hear about that from DirecTV. It is a red herring, short and sweet. And it looks like that my client suffered a loss. Now, whether we suffered the loss that's the amount of the award, I have no idea. But that is not what this settlement agreement is. You attest to a loss a plausible explanation, which is exactly what my client did. Then you go to the causation framework, found in Exhibit B, and we've done that. And Basic passed the attestation. But under the causation argument, you go to Exhibit 4B. I don't mean to interrupt, because I want to hear that, too, but while we're still on attestation, BP has pointed out, and we have several cases, as BP has explained, where after our decisions in David West and the other one that came two or three days right behind it, we've sent these back for reconsideration. I'm not sure I heard in your answer to Judge Elrod why that wouldn't be inappropriate. You may have compelling arguments to make about why the review should still be denied, but why wouldn't we just send it back the way we have with these other cases for reconsideration? Judge, the West case is an individual economic loss case, as opposed to the Basic case, which is a BEL case, business economic loss case. The West case involved a professional basketball player with one contract, one revenue stream. This client, Basic, DirecTV was but a fraction for a number of years of its income. Again, this gentleman, Basic Your Best Buy, had revenue from numerous sources. They did repair work. They did warranty work. They advertised for their appliances, furnitures, online purchases, delivery purchases. We submitted tens of thousands of line item customer mix data in this claim file that is over 20,000 pages, and a good number of that is customer mix data. Almost all of that customer mix data is not related to DirecTV. So to answer your question, Judge, those cases involved a situation where the claimant had essentially one line of revenue and could not reasonably attest to the fact that the spill harmed them on that one line of revenue. There's no doubt in this case, I mean, when you consider the amount of money spent with this business for purposes of additional lines of revenue, that the spill in some way affected this claim. I mean, much to my wife's happiness, I have an entire house full of appliance and furniture from this claim. And so does thousands of other homes throughout not only north Louisiana, but throughout all zones. And just as an example, this is just something I picked up this morning out of the customer mix data. 19672, electronic record on appeal, 17,000 purchased by one individual for appliances for a home. Same page, 11,000 appliances and furniture purchased by one individual. Nothing to do with DirecTV. 19674, record on appeal, 10,000. That's in one page of customer mix data. This business was very successful in things beyond DirecTV. But when DirecTV terminated, and that led to the lawsuit, when they terminated the agreement with Basic, they didn't just terminate in 2008 like BP would have you believe. There was a post-termination agreement that allowed for revenues through September of 29. The problem was DirecTV said, we're taking your phone numbers, and we'll throw you a crumb. We'll pay you per activation. But my client had 125,000 people upstairs above his showroom with nothing to sell, no phones. But my point is, there was revenue that was still being derived up until late 2010 because of the post-termination agreement. How did the company do it? The way they did it was, and this is important when it comes to the fixed expenses that I'll talk about in just a second, they purchased yellow book advertisements all over the country and spent millions of dollars in advertisements, not just for DirecTV, but for their business downstairs. But most of those had two-year terms. They were fixed expenses by their substantive nature because it didn't matter how much money they made for revenue, those debts were owed. So DirecTV does acknowledge, look, Basic has these obligations that they're not going to be able to pay, so we're going to pay them some expenses. But my question is, we're going to pay them for activations, but the question is, how did that affect, how did the spill affect during the interim? Were there calls that would have been activated that weren't because people in the Gulf Coast region weren't going to buy DirecTV satellites? Absolutely. Now to what extent? We don't know that, but that's why there's a causation framework in the settlement agreement. But without a doubt, and they say that we don't attest, all we say is we attest to the accuracy of the documents, we do attest to the accuracy of the documents. We hired a professional accounting firm and they did an absolute, a great job in providing those documentations, but Basic certainly attests to the fact that they suffered a loss because of the spill. Now the quantification of that loss is above my pay grade, quite frankly, but we do comply with the You want to talk about one in three of his arguments? Yes, ma'am. As it relates to causation, I do want to point out that the appeal panel one, I believe, as Judge Oldham pointed out, they held that Basic met causation on two independent grounds, not just one. They found the DirecTV termination sufficient, loss of a customer essentially, and the second one was the entry of competitors. So not only does Basic pass the second prong of causation with the DirecTV contract, but they also pass with the entry of competitors. And DirecTV sought discretionary review of appeal panel one, but then they didn't appeal to this court. And the way they brief the argument on competitors, I'm not sure that they I don't believe it's even addressed in their opening brief. But my point is Basic has satisfied causation, the second prong of causation, which is the only issue of causation. They don't argue one, and they don't argue three, the three prongs. They argue two. Basic satisfied those in two regards, which, Your Honors, brings me to, we don't think that BP has any argument as it pertains to attestation and causation. We think they have very little argument as it pertains to classification of expenses. But if there is anything that has any scintilla of merit, it would be the argument on expenses. So I want to at least take a couple of minutes and discuss with you or talk to you about the arguments before as to whether expenses should be classified as fixed versus variable. And I'm sure the court is very familiar with Texas Gulf Seafood, which has been cited ad nauseum, in my opinion, but it's out there. And we don't necessarily disagree with it. But what Texas Gulf Coast Seafood says is that you have to look at the substantive nature of the expenses. There is no indication in this case that the claims administrator or the appeal panel did not look at the substantive nature of the expenses. So it did not simply defer to the labels? That's BP's argument. We do not believe that they did. Okay. Tell us why not. Well, the language says that it appears to comply. The second appeal panel says it appears to comply with Exhibit 4B. There's no indication to me that that's agreeing solely to the label. Okay. Now, did they go into extreme detail as to why it was fixed? They didn't. But there's no indication that they did not. But I'm sorry. That's not the relevant question. Don't you have to In order to have the claim, the appeal panel has to do an independent and substantive analysis to ensure that it's right? So simply saying that there's no evidence that they didn't doesn't really get you very far, does it? Well, I do think there is case law to that effect, Your Honor, and we cite it. We cite it as 2009 Westlaw 2719916777 Federal Appendix 721. Just as we do with other fact-finding under the settlement process, we will not assume, absent any supportive evidence, that the appeal panel failed to examine the record and determine the nature of the expenses. I'm sorry, but was that after our 2019 decision that BP is invoking the ENDS 533? That's the one that gives us the legal standard that says we need an independent substantive analysis. Is that Texas Gulf Seafood, Your Honor? I just have to claim an ID number. I'm sorry. This decision that I just cited came after Texas Gulf Seafood, and I think that's what they're relying on is Texas Gulf Seafood. So my response to you would be absent evidence that the appeal panel did not consider the substantive nature. I don't believe that's an abuse of discretion by the district court. I think there's ample case law that supports that. Is there a statement that it conducted a de novo review even in one sentence? Does it say that? The appeal panel, Your Honor? Yeah. Does it say the appeal panel conducted a de novo review or anything like that? I'd have to go back and look, because we have two appeal panel decisions, so I'd have to go back and look and see which one we're talking about. I'm looking at Appeal Panel 2, and its entire discussion seems to say the classification of these expenses appear to comply with Exhibit 4B. I assume that really means 4D, not 4B. I would essentially agree with that, Your Honor, because 4B is causation. Right. But even giving, spotting it, that it means 4D, that doesn't seem to be what our post-Texas Gulf Seafood cases would require. And again, the case I just cited out of the Federal Appendix is a post-Texas Gulf Seafood. Essentially, Judge, I have three arguments on the expenses, okay? One, by their very nature, these expenses are fixed, okay? I mean, even if you say that 4D is an example, the very first fixed expense on 4D is advertising. The very first one. And that doesn't mean that they have to apply, but if there was something about it that didn't fit or didn't fit a label, then maybe you look to variable and fix. Amount calculated based on the sales? Ma'am? Amounts calculated based on the sales, right? Based on the revenue. Right. Right. Okay. And it's the types of costs that would be fixed. Is that your argument? That's correct. Okay. The BP argues that the advertising costs should be considered variable that would be deducted from the revenue for purposes of compensation of the award. We disagree with that, and we say that they were appropriately categorized as fixed expenses, so they're not deducted from revenue. And part of that goes back to when I was explaining, Your Honor, how this business operated. They purchased all these advertisements, and then they were left on the hook for it. I mean, it's a two-year contract. You have to pay that out. So the substantive nature of these expenses are fixed as opposed to variable. That's the first argument as it pertains to advertising, because we looked at it by month. In May of 2009, Basic booked 33% of its advertising costs, but only 7.32% of its yearly revenue in the same month. In March of 2009, revenue went up by 20.1% compared to the prior month, yet advertising went down 3.73 compared to the prior month. So their argument is if it's a variable expense that's connected to revenue, the data that we've produced does not support that. And the second reason that BP's argument fails is, again, there's no indication that the claims administrator did not consider the expenses. That's just what we talked about regarding that particular federal appendix case. I will point out, Your Honor, that that is an unpublished decision, having looked at it. I want to be clear about the court that I'm not trying to say that's a published decision, but it is post-Texas guilt. And third, and I think this is an argument that hopefully will be considered, because I think it's a valid and reasonable argument, given the case law that's come out of this court. Even if the settlement program did somehow misclassify, which we don't think they did, and we think a remand would be a waste of time because the district court's going to say those are fixed expenses, we're going to be standing right back before you when they appeal that decision. But even if they did misclassify the expenses, that involves the correctness of a discretionary administrative decision to the facts of a single claimant's case and does not constitute an abuse of discretion. And we cite that, again, a Texas Gulf case. We cite it incorrectly, unfortunately, as 910 Federal 3rd 314. It's 920 Federal 3rd 314, and that is a direct cite from that case. So, Your Honors, I would close with this. There are three issues that BP brings up in this case. One is attestation. We believe that has no merit based on basic suffering, a clear loss. We can't quantify the loss. That's what the settlement program does, but basic has attested to a loss. The second is causation. We've met causation, and we've met the second prong of causation in not one but two matters. And the third are the expenses, and we just discussed why those expenses should be classified as fixed versus bearable. Now, we've been through seven years since basic has filed their claim in this matter. We've been through two appeal panels, two denials of discretionary review, and now one appeal. We do not believe that the district court abused its discretion when it decided to deny discretionary review in this matter, and we would ask that that decision be affirmed. Thank you for your time. Thank you. On attestation, Claimant Council said that the claimant did suffer loss caused by this bill for the first time today. They did not say that in their brief in this court or in the proceedings below. They instead argued that the attestation requirement has nothing to do with causation. I would point you again to page 17 of their brief in this court. It says all claimant certified was that its documentation was accurate and complete. They go on at the bottom of that page to say nothing else. They said in their brief that they're not attesting to causation. They stand here today and say they are attesting to causation. On this record, I think that the statements today are implausible, but they are at least suspicious based on the direct TV termination and the complaint related to the termination. The fact that claimant didn't say it can attest to a loss caused by this bill until today, and it's triply suspicious because this claimant indisputably can't satisfy either of the V-shaped revenue pattern causation tests. We don't believe that they can satisfy the decline only, that last decline only test either, but at best it hangs together by a thread. So that's absolutely suspicious and we think implausible. The claimant's counsel was asked why this case shouldn't be remanded for consideration in light of the West and Howard Industries cases that set forth and announced the appropriate standards for evaluation of attestation as happened in the foundation and basketball team cases. There was no satisfactory answer. It was said that the West case involved an individual loss claim, whereas this is a business, but the attestation requirement applies equally to both of them, and in any event, the Howard Industries claim was a business claim, so there's no distinction there. Why did the panel not exercise independent judgment by referring to the baseball process? Why isn't that an exercise in independent judgment? Under Texas Gulf Seafood, the independent judgment that needs to be exercised is in classifying the expenses as fixed or variable. On the baseball process, the appeal panel's reference to the baseball process is wrong and irrelevant here for two reasons, factually and legally. First, factually, and this is significant, if the advertising expenses that we're talking about are classified as variable rather than fixed, it reduces the claimant's award by 85% from more than $6 million to about $800,000, and in that case, in fact, the appropriate baseball offer would absolutely have been BP's, not ours, and in any event, the baseball process has no ability on BP's ability to pursue the expense misclassification issue here because BP, of course, had also raised the decline only argument and the attestation argument, and if BP was correct on either of those, the appropriate award was zero, so that was why BP offered an award of zero, and that shouldn't foreclose BP from raising the expense misclassification issue, particularly, as I said, when it's a $5.5 million issue with a delta of 85% for the claimant's claim. The claimant's counsel said that the nature of the advertising expenses is fixed, but it's not for two reasons. First, those expenses literally vary. They vary in relatively close proportion to the claimant's revenue, and we put those numbers year over year, revenue and advertising numbers on page 32 of our opening brief. But counsel, that's not relevant whether or not the decision was actually correct or not. Whether the decision is actually correct or not, whether it's variable or fixed, is not an issue that would allow you to get the district court back involved. The issue is that the expenses were classified on the basis of their label, not their nature, and that was the way that they were classified, because that is what the claimant said. Right, but what you're arguing right now is that it's on the merits, and that's not relevant. Sure, that should be addressed below. I would agree with that. The proper classification can be addressed below. The issue for this court is that the claimant urged the appeal panel, again at page 2672 of the record on appeal, that the expenses should be classified on the basis of their label, not their nature. That was done. The appeal panel did that and said it was doing that, said as claimant notes it was done correctly, and it wasn't done correctly. It was wrong. We would ask that this court reverse the district court's decision. Thank you.